# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 94-30691
Summary Calendar

STERLING HEBERT, CHERYL HEBERT,
TODD HEBERT and JODY HEBERT,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana
(CA-92-3356 "L")

December 16, 1996

Before POLITZ, Chief Judge, DUHÉ and STEWART, Circuit Judges.

POLITZ, Chief Judge:[*]

Sterling Hebert and his wife and children appeal the district court's judgment

in favor of the United States in this medical malpractice action. For the reasons

assigned, we vacate and remand.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## Background

In March of 1991 Hebert sought the services of Richard A. Morvant, M.D., an orthopedic surgeon, for treatment of knee pain. Determining that the reported pain was a result of arthritis, Dr. Morvant prescribed Voltaren, an anti-inflammatory drug. During the next several weeks Hebert experienced a worsening of the pain in his elbows, wrists, and shoulders, and he went to see his family physician, John W. Magee, M.D., who ordered, *inter alia*, a creatinine test to measure his renal function and a chest x-ray. Hebert's creatinine level, l.3, was within the normal range; the x-ray disclosed, however, a possible mass on his lung. Dr. Magee advised Hebert that additional testing was needed. Hebert went to the Veterans Administration Medical Center in New Orleans, Louisiana on April 10, 1991 and was examined by Edward D. Mathews, M.D., an internist, who ordered several tests. The results of those tests, performed the following day, showed that Hebert's creatinine level was 2.2, which is abnormal, and the x-ray showed a possible tumor in his left lung. Dr. Mathews then ordered a CT scan to be performed on the next available date. The test was scheduled for May 25, 1991. Dr. Mathews planned to retest Hebert's creatinine level at the same time that the CT scan was performed.

In order to obtain the CT scan sooner, Hebert went to the South Louisiana

Medical Center in Houma, Louisiana on April 18, 1991, where a CT scan was scheduled for a few days later. The next day, April 19, 1991, Hebert collapsed in his home and his family took him to the emergency room at Thibodaux General Hospital. Laboratory tests there revealed that Hebert's creatinine level was 10.8. The attending physician, Stephen Harris, M.D., diagnosed acute renal failure and arranged for his immediate transfer to Ocshner Hospital in New Orleans. Upon arrival at Ocshner, Hebert's creatinine level was 11.1. John Copley, M.D., the attending physician at Ocshner, confirmed that Hebert was suffering from renal failure.

The instant action, under the Federal Torts Claims Act, was filed against the United States as owner and operator of the Veterans Administration Medical Center in New Orleans, alleging that the VA failed to diagnose timely Hebert's renal disease which lessened his chances of avoiding permanent renal failure. After conducting a bench trial, the district court issued findings of facts and conclusions of law holding that the scheduling of the CT scan and follow-up lab tests more than six weeks after referral to the VA fell below the acceptable standard of medical care, but that Hebert had failed to prove causation. The Heberts timely appealed.

## Analysis

We review the district court's findings of fact for clear error and its legal

conclusions *de novo*.[1] Clear error exists when we are left with the definite and firm conviction that a mistake has been made.[2] Actions under the FTCA are determined in accordance with the law of the place where the act or omission occurred.[3] Under Louisiana law, a medical malpractice plaintiff's burden is two-fold: "The plaintiff must first establish by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care expected of physicians in his medical specialty, and must then establish a causal relationship between the alleged negligent treatment and the injury sustained."[4] Both determinations are questions of fact.[5]

Under Louisiana's "loss-of-chance" doctrine a plaintiff must prove that he lost <u>a chance of recovery</u>[6] and that the defendant's conduct was a substantial factor in causing the loss of that chance.[7] The district court held that the defendant's

---

[1]**Seal v. Knorpp**, 957 F.2d 1230 (5th Cir. 1992).

[2]**Burlington Northern R.R. v. Office of Inspector Gen., R.R. Retirement Bd.**, 983 F.2d 631 (5th Cir. 1993).

[3] 28 U.S.C. § 1346(b).

[4]**Martin v. East Jefferson Gen. Hosp.**, 582 So.2d 1272, 1276 (La. 1991).

[5]**Id.**; <u>see</u> <u>also</u> **Broussard v. United States**, 989 F.2d 171 (5th Cir. 1993).

[6]**Smith v. State**, 676 So.2d 543 (La. 1996).

[7]**Ruff v. Bossier Medical Center**, 952 F.2d 138 (5th Cir. 1992); **Smith v. State**, 523 So.2d 815 (La. 1988).

actions fell below the relevant standard of care. The court found, however, that the plaintiff had "failed to establish a causal relationship between the defendant's negligence and their injuries." In reaching this conclusion, the district court relied on the testimony of defense witnesses who testified that the defendant's failure to order a CT scan and additional tests in a timely manner did not cause the renal failure. While this evidence adequately supports a finding that a breach of the standard of care did not <u>cause</u> the renal failure, it does <u>not</u> support a finding that the breach of the standard of care found by the district court did not <u>cause the loss of a chance of recovery</u>, or a chance to limit the adverse effects of the renal failure.

The evidence compels a contrary finding. The record reflects that there was no disagreement that Hebert lost a significant chance of recovery. Ronald J. Falk, M.D., one of the plaintiff's expert witnesses, testified that Hebert lost a chance of recovery, *i.e.*, maintaining some renal function, due to the delay in diagnosis and treatment. Two of the government's expert witnesses agreed. Dr. O'Donovan stated that if Hebert had received treatment at the time he was seen at the VA he would have had a better chance of avoiding renal failure. Dr. Rodriguez testified that Hebert's chance of avoiding permanent renal failure would have been better if the diagnosis had been made earlier.

The district court failed to make the relevant finding about the standard of

care, that is, whether the defendant breached the standard of care by failing to order follow-up tests, and begin treatment, prior to Hebert's renal failure. The district court's finding regarding causation inappropriately focuses on the cause of the renal failure rather than on the inquiry whether a breach of the standard of care caused a recoverable loss of chance of avoiding the extent of renal failure. Accordingly, we must VACATE and REMAND for the determination whether the failure to retest Hebert's creatinine level and perform a CT scan timely and prior to his renal failure was a breach of the standard of care, and whether that breach caused a loss of chance of recovery and, if so, the damages for the injury sustained.